UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

TRENT ALVAREZ, on behalf of himself and all others similarly situated,

Plaintiff,

v.

T-MOBILE USA, INC., and DOES 1-10,

Defendant,
_____________________________/

NO. CIV. 2:10-2373 WBS GGH

MEMORANDUM AND ORDER RE: MOTION TO COMPEL ARBITRATION AND STAY CLAIMS

----oo0oo----

Plaintiff Trent Alvarez brought this putative class action against defendant T-Mobile USA, Inc. (“T-Mobile”) arising out of plaintiff’s mobile phone contract with T-Mobile. The Complaint alleges violation of the California Consumer Legal Remedies Act (“CLRA”), the California Unfair Competition Law (“UCL”), and the California False Advertising Law (“FAL”). Presently before the court is T-Mobile’s motion to compel binding arbitration pursuant to the Federal Arbitration Act (“FAA”).

I. Factual and Procedural Background

In August of 2009, Alvarez visited a T-Mobile store where he activated a cell phone plan with two phone lines. (Compl. ¶ 38.) The plan that he signed up for was a T-Mobile myFave FamilyTime plan that was advertised as offering unlimited web access and text messaging and required him to agree to a twenty-four month contract. (Id. ¶¶ 38, 59.) At the same time, Alvarez purchased two cell phones for use on the plan. (Id.)

When the T-Mobile sales representative was finished obtaining the information necessary to activate Alvarez's account, he calculated the total amount due and asked Alvarez to sign an electronic signature pad. (Id. ¶ 60; Alvarez Decl. ¶¶ 8, 9 (Docket No. 54).) According to Alvarez, when he signed the pad, the screen displayed little to no words and he believed that in signing the pad he was merely authorizing the store to charge his credit card. (Alvarez Dep. at 23:17-24:20.)

T-Mobile claims that the electronic pad was programmed in such a way that before the signature pad displayed the signature screen, it displayed several screens that required the customer to accept or agree to a "bulleted version of the contract" that included the arbitration provision and the opt-out provision. (Brown Decl. ¶¶ 1-5, Tab 1 (Docket No. 60-3).) Without indicating agreement or acceptance, a customer could not access the signature screen and complete their transaction. (Id.; Smith Decl. ¶ 6 (Docket No. 60).) T-Mobile additionally claims that the signature screen displayed the following words above the signature line: "I have had the opportunity to review my Agreement and I agree to the current version of T-Mobile's

Terms and Conditions." (Brown Decl. ¶ 6, Tab 1.)[1]

The sales representative did not provide Alvarez with a copy of the Terms and Conditions. (Id.) According to Alvarez, the Terms and Conditions were not included in the packaging of his phones. (Alvarez Decl. ¶ 22; Alvarez Dep. at 21:16-22 (Docket No. 57).) T-Mobile, on the other hand, maintains that it is its regular business practice to insert copies of the Terms and Conditions into the packaging of cell phones sold to customers. (Smith Decl. ¶ 19, Tab 2.)

According to the Complaint, after Alvarez signed this pad, the sales representative "printed out a contract with Plaintiff's electronic signature applied to the contract. This service agreement describes the plans' prices, 24-month commitments, and other terms." (Compl. ¶ 60.) The contract

---

[1] The court notes that the Brown and Smith declarations are attached to T-Mobile's Reply and that, generally, a court should not consider new evidence offered in reply without giving the non-moving party an opportunity to respond to the new evidence. Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996). T-Mobile contends that the affidavits are offered in response to arguments that Alvarez raised for the first time in his Complaint, and that in such circumstances it is entitled to submit affidavits that controvert these newly asserted statements of fact. See Pestube Sys., Inc. v. Hometeam Pest Defense, LLC, No. CV 05-2832, 2007 WL 973964, at *5 (D. Ariz. Mar. 30, 2007) ("Although these affidavits were not disclosed in Plaintiff's opening Motion to the Court, it appears that the affidavits are not being offered as new evidence, but rather to controvert certain statements of fact submitted by Defendant."); E.E.O.C. v. Creative Networks, LLC, No. CV-05-3032, 2008 WL 5225807, at *2 (D. Ariz. Dec. 15, 2008) (holding that a moving party's evidence submitted in reply is properly considered when the evidence "rebut[s] arguments first raised by [the non-moving party] in its opposition"); Mintun v. Peterson, NO. CV06-447-S, 2010 WL 1338148, at *27 (D. Idaho Mar. 30, 2010).

As will be shown below, the court does not rely on the this declaration in its holding and discusses the claims contained in these declaration here only in order to present a fuller picture of the conflicting stories offered by the parties.

"refers to T-Mobile's Terms and Conditions and provides that the Terms and Conditions are available in T-Mobile stores." (Id.)

T-Mobile has submitted a copy of the signed contract referred to by Alvarez along with its motion to compel arbitration. (Baca Decl. Tab 1 (Docket No. 7-2).) Alvarez claims that he was not provided with the contract in the T-Mobile store at the time he activated his phones. (Alvarez Dep. at 52:3-53:8.) T-Mobile claims that at the store at which Alvarez purchased his phone and activated his phone plan, it was the regular practice to provide customers with a copy of their Service Agreements. (Smith Decl. ¶ 7 (Docket No. 60-1).)

In addition to summarizing the price and length terms of the cellular service plan, the one-page Service Agreement lists six terms to which the customer agrees "by signing [the] form or activating or using T-Mobile service." (Baca Decl. Tab 1.) The second of these terms incorporates the Terms and Conditions and the third states that the customer agrees that "**T-Mobile requires ARBITRATION of disputes UNLESS I OPT-OUT WITHIN 30 DAYS OF ACTIVATION.** See T-Mobile's Terms and Conditions for details . . . ." (Id. (emphasis in original).) The agreement additionally states that the signer can "obtain copies of T-Mobile's Terms and Conditions . . . plan at T-Mobile retail stores, at www.T-Mobile.com . . ., or by calling Customer Care at (800) 937-8997 or 611 from any T-Mobile phone. I have received and read my Agreement." (Id.)

The Terms and Conditions, in turn, contain an arbitration clause in the second numbered paragraph that states that

> **WE EACH AGREE THAT EXCEPT AS PROVIDED BELOW (AND EXCEPT AS TO PUERTO RICO CUSTOMERS), ANY AND ALL CLAIMS OR DISPUTES BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT.**

(Id. Tab 3, at 32 (emphasis in original).) They also contain a class action waiver, (id. at 33), and an opt-out provision providing that

> **Notwithstanding the above, YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION if**: (a) your claim qualifies, you may initiate proceedings in small claims court; or (b) **YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE DATE YOU ACTIVATED THAT PARTICULAR LINE OF SERVICE (the "Opt Out Deadline").** You may opt out of these arbitration procedures by calling 1-866-323-4405 or via the Internet by completing the opt-out form located at **www.tmobiledisputeresolution.com. Any opt-out received after the Opt Out Deadline will not be valid and you must pursue your claim in arbitration or small claims court.**

(Id. at 32 (emphasis in original).) Alvarez admits that he never opted out of the arbitration provision. (Alvarez Dep. at 58:10-12 (Docket No. 60-6).)

Alvarez activated a third cell phone line with T-Mobile in 2010, at which time his electronic signature was similarly appended to a Service Agreement. (Opp'n at 4.) He states, however, that this suit is confined to claims arising out of the initial cell phone contract and two lines of service that he set up in 2009. (Alvarez Dep. at 44:12-45:10 (Docket No. 60-6); see Compl. at 19-21.)

T-Mobile filed a motion to compel arbitration, (Docket No. 7), and then requested a stay pending the Supreme Court's decision in AT & T Mobility LLC v. Concepcion, --- U.S. ----, 130 S. Ct. 1740 (2010), (Docket No. 8). The court granted the stay

on December 6, 2010. (Docket No. 21.) The decision in Concepcion was handed down on April 27, 2011, and the court lifted the stay as to this action on June 21, 2011. (Docket No. 29.)

II. Evidentiary Objections

On a motion to compel arbitration, the court applies a standard similar to the summary judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure. Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citing McCarthy v. Providential Corp., No. C 94–0627, 1994 WL 387852, at *2 (N.D. Cal. July 19, 1994)). Under Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "[T]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (quoting Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001)) (internal quotation marks omitted). Even if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial. See Burch v. Regents of the Univ. of Cal., 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006).

Alvarez has raised multiple (unnumbered) objections, (Docket Nos. 51, 52), to portions of the declarations of Rebekah Casner and Andrea Baca on grounds of lack of relevance, lack of

personal knowledge, improper authentication, hearsay, the best evidence rule, and improper expert testimony. In response to the declarations attached to T-Mobile's Response, Alvarez raised additional objections on the grounds that those declarations improperly raised new facts, and also that the declaration of Steve Brown lacks foundation and is based on improperly authenticated documents. (Docket No. 64.)

Objections to evidence on the ground that the evidence is irrelevant, speculative, argumentative, vague and ambiguous, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself. See Burch, 433 F. Supp. 2d at 1119-20. A court can award summary judgment only when there is no genuine dispute of material fact. Statements based on improper legal conclusions or without personal knowledge are not facts and can only be considered as arguments, not as facts, on a motion for summary judgment. Instead of challenging the admissibility of this evidence, lawyers should challenge its sufficiency. Objections on any of these grounds are superfluous, and the court will overrule them.

Similarly, at the summary judgment stage the court does not "focus on the admissibility of the evidence's form," but rather "focus[es] on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). Objections on the basis of a failure to comply with the technicalities of authentication requirements or the best evidence rule are, therefore, inappropriate. See Adams v. Kraft, --- F. Supp. 2d ----, ----, 2011 WL 5079528, at *25 n.5 (N.D. Cal. Oct. 25, 2011) ("On summary judgment, unauthenticated documents may be

considered where it is apparent that they are capable of being reduced to admissible evidence at trial."); Hughes v. United States, 953 F.2d 531, 543 (9th Cir. 1992) (holding that even if declaration violated best evidence rule, court was not precluded from considering declaration in awarding summary judgment). As plaintiff has not shown and the court does not see why the contents of the documents at issue could not be properly presented at trial, the court overrules Alvarez's objections on these grounds.

In the interest of brevity, as the parties are aware of the substance of their objections and the grounds asserted in support of each objection, the court will not review the substance or grounds of the remaining individual objections here. As the court does not rely on any remaining evidence objected to in these declarations, Alvarez's remaining objections are overruled as moot.

III. Discussion

The FAA provides that a party may seek an order to compel arbitration from a district court where another party fails, neglects, or refuses to arbitrate. 9 U.S.C. §§ 1, 4. Section 4 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. See Cohen v. Wedbush, Noble

Cooke, Inc., 841 F.2d 282, 285 (9th Cir. 1988).

"The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). Here, for the reasons discussed below, the court concludes as a matter of law that the arbitration provision as worded covers Alvarez's claims. Further, for the following reasons, the court is not persuaded by Alvarez's argument that the provision is unconscionable.

A. Scope of the Arbitration Agreement

The Supreme Court has held that because the FAA reflects a "liberal federal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). Here, the arbitration provision provides that all claims "in any way related to or concerning the agreement, our services, devices or products . . . will be resolved by binding arbitration, rather than in court." (Baca Decl. Tab 3, at 32.)

It is clear from the plain language of the agreement that Alvarez's false advertising claims fall within the scope of the arbitration provision. The gravamen of Alvarez's claim is that he purchased a phone plan that was advertised as an "unlimited data" plan, but that T-Mobile placed a data cap on his phone that resulted in slower data speeds and impaired function. In other words, Alvarez claims that he has been damaged because the services that were advertised were not equal to the services

he received. Although Alvarez tries to focus the court's attention on the advertisement part of this equation, his claims necessarily involve the service that he received.

In Arellano v. T-Mobile USA, Inc., No. C 10–05663, 2011 WL 1362165 (N.D. Cal. Apr. 11, 2011), the plaintiffs brought false advertising claims related to T-Mobile's cell phone service, and T-Mobile moved to compel arbitration under an arbitration provision covering disputes "related to or concerning the agreement, our services, devices or products," language identical to the language at issue here. Id. at *1. Although the court did not explicitly state that the arbitration provision encompassed the plaintiffs' false advertising claims, that appears to be the case because neither the plaintiffs nor the court thought it worthwhile to contest that the arbitration provision covered the kinds of claims at issue. See Arellano, 2011 WL 1362165, at * 2 (noting that "[i]f the district court determines that a valid arbitration agreement encompasses the dispute, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms," but not specifically addressing whether the agreement at issue encompassed plaintffs' claims). The absence of any argument on this point in Arellano supports the court's conclusion that the arbitration provision language used should be interpreted to cover the false advertising claims at issue here.

B. Unconscionability

The final phrase of § 2 of the FAA limits the arbitration agreements that a court may enforce, providing that courts may declare such agreements unenforceable "upon such

grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. As noted above, this proceeding was stayed pending the decision in AT & T v. Concepcion, --- U.S. ----, 131 S. Ct. 1740 (2011), which clarified the meaning of this language.

In that decision, the Supreme Court overruled a line of decisions in the Ninth Circuit that had applied state unconscionability law to invalidate arbitration clauses' class action waivers, a rule referred to as the "Discover Bank rule," after Discover Bank v. Superior Court, 36 Cal. 4th 148 (2005). Concepcion, 131 S. Ct. at 1753. The problem with such a rule against class action waivers, the court explained, was that although the unconscionability doctrine was applied in a facially neutral manner as between arbitration contracts and other contracts, it had a "disproportionate impact on arbitration agreements." Id. at 1747. Specifically, the Discover Bank rule interfered with the goals of the FAA because it sacrificed the efficiency of arbitration, increased procedural formality, and increased risks to defendants. Id. at 1751-52. The Court clarified that while § 2 of the FAA "preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." Id. at 1748.

In the wake of Concepcion, the decision has been interpreted to bar challenges to arbitration agreements on the grounds that they contain class action waivers, but not to prevent courts from considering other unconscionability arguments that do not "interfere[] with fundamental attributes of

arbitration and thus create[] a scheme inconsistent with the FAA." Id. at 1748; see, e.g., Kanbar v. O'Melveny & Myers, --- F. Supp. 2d ----, ----, No C-11-0892, 2011 WL 2940690, at *6 (N.D. Cal. July 21, 2011); In re DirectTV Early Cancellation Fee Mktg. & Sales Practice Litig., --- F. Supp. 2d ----, ----, 2011 WL 4090774, at *5 (C.D. Cal. Sept. 6, 2011) ("As Concepcion made clear, the savings clause of the FAA still permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability."); Hamby v. Power Toyota Irvine, --- F. Supp. 2d ----, ----, No. 11cv544, 2011 WL 2852279, at *1 (S.D. Cal. July 18, 2011) (concluding that the decision in Concepcion "does not stand for the proposition that a party can never oppose arbitration on the ground that the arbitration clause is unconscionable"); Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp., 197 Cal. App. 4th 1146, 1158 (4th Dist. 2011) (noting that under the holding in Concepcion the "[g]eneral state law doctrine pertaining to unconscionability is preserved unless it involves a defense that applies 'only to arbitration or that derive[s][its] meaning from the fact that an agreement to arbitrate is at issue'") (quoting Concepcion, 131 S. Ct. at 1746)).

Unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000) (citing A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486-87 (1982)). Both elements must be present, although not necessarily to the

same degree. Id. at 114 (noting that courts apply a sliding scale where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa").

"Procedural unconscionability addresses the manner in which agreement to the disputed term was sought or obtained, such as unequal bargaining power between the parties and hidden terms included in contracts of adhesion." Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1099 (4th Dist. 2002). A contract of adhesion, in turn, is defined as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it" and without affording the subscribing party an opportunity to negotiate. Armendariz, 24 Cal. 4th at 113–15. While some courts have held that the finding that a contract is adhesive is sufficient to support a finding of procedural unconscionability, Parada v. Superior Court, 176 Cal. App. 4th 1554, 1571-72 (4th Dist. 2009) (citing cases), there is no contract of adhesion if the contract provides the party with less bargaining power a meaningful opportunity to opt-out of arbitration. Circuit City Stores, 283 F.3d at 1199 (finding no procedural unconscionability where plaintiff was given thirty days to decide whether to participate in the arbitration program and mail a simple form to opt-out, and the arbitration agreement did not contain any other indicia of procedural unconscionability).

Although the Service Agreement and incorporated Terms and Conditions have some adhesive characteristics--they are

standardized agreements drafted by T-Mobile, the party with superior bargaining power--Alvarez did not face a take-it-or-leave-it choice. Instead, the contract afforded him the opportunity to opt-out of the arbitration clause without suffering any adverse consequences, and allowed him thirty days to consider whether he wanted to take advantage of that opportunity. Neither the arbitration provision nor the opt-out provision were hidden terms; rather they were noted in bold, capitalized words on the one-page Service Agreement and in the second numbered paragraph of the Terms and Conditions. Contrary to Alvarez's contentions, the court does not find the terms confusing. The arbitration provision, therefore, cannot be termed procedurally unconscionable. See Meyer, 2011 WL 4434810, at *5 (finding no procedural unconscionability in T-Mobile arbitration agreements very similar to the one in this case); Arellano, 2011 WL 1842712, at *1-2 (same).

As the court in Meyer held, if "there is no procedural unconscionability, the arbitration agreement is not unconscionable on the whole." Meyer, 2011 WL 4434810, at *6 (citing Gatton v. T–Mobile, USA, Inc., 152 Cal. App. 4th 571, 599 (1st Dist. 2007) ("Because there is an absence on this record of both the surprise and oppression factors of procedural unconscionability, the service agreement is not unconscionable, and T–Mobile's motion to compel arbitration should be granted.")).

Because the court finds that the contract in this case is not procedurally unconscionable, it need not address Alvarez's arguments regarding substantive unconscionability except to note

that, to the extent that he relies on the argument that the prohibitions on public injunctive and declaratory relief and on punitive damages are unconscionable because they undermine pro-consumer policies, those arguments are not viable post-Concepcion because state laws advancing those policies are preempted by the FAA. See, e.g., Hendricks v. AT & T Mobility, --- F. Supp. ----, ----, 2011 WL 5104421, at *7 (N.D. Cal. Oct. 26, 2011) (rejecting argument that arbitrator must be able to enjoin unlawful conduct as to all consumers because Concepcion rejected such an argument in holding that "states cannot require a procedure that is inconsistent with the FAA, even if it desirable for unrelated reasons") (quoting Concepcion, 131 S. Ct. at 1753); Meyer v. T-Mobile USA Inc., No. C 10-5858, 2011 WL 4434810, at *7-8 (N.D. Cal. Sept. 23, 2011) (holding that while public policy supporting a prohibition on arbitration of public injunctive relief claims may be compelling, "such a prohibition does not survive Concepcion"); Kaltwasser v. AT & T Mobility LLC, --- F. Supp. 2d ----, ----, 2011 WL 4381748, at *6-7 (N.D. Cal. Sept. 20, 2011). But see In re DirectTV Early Cancellation Fee Mktg. & Sales Practice Litig., 2011 WL 4090774, at *10 (holding that California law creating private right to bring injunctive relief claims on behalf of the public is not pre-empted by the FAA, even after Concepcion); Ferguson v. Corinthian Colleges, Nos. SACV 11–0127, SACV 11–0259, 2011 WL 4852339, at *8 (C.D. Cal. Oct. 6, 2011) (same).[2]

---

[2] The court also notes that the Terms and Conditions expressly state that "[a]n arbitrator may award on an individual basis any relief that would be available in a court, including injunctive or declaratory relief and attorneys' fees," and that

C. Agreement to Arbitrate

The court having determined that Alvarez's claims would be covered by the arbitration provision at issue and that the arbitration provision is not unconscionable, the only remaining issue is whether the parties in fact entered into an arbitration agreement. One of the foundational principles of the FAA is that "arbitration is a matter of consent." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1775 (2010). Although the FAA sets forth a policy favoring arbitration, "a party cannot be required to submit to arbitration in any dispute which he has not agreed so to submit." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960); see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1139 (9th Cir. 1991). Thus, whether a party has submitted to arbitration is first and foremost a matter of contractual interpretation that must hinge on the intent of the parties. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); United Steelworkers, 393 U.S. at 582. In deciding whether a party agreed to arbitrate a particular issue, courts should apply state-law principles that govern contract formation. United Steelworkers, 393 U.S. at 582.

The party seeking to enforce an arbitration agreement

---

the limitation on punitive damages is only valid "unless prohibited by law." (Baca Decl. Tab 3, at 33, 37 (emphasis omitted).) See Lozano v. AT & T Wireless, No. CV02-00090, 2003 WL 25548566, at *5 (C.D. Cal. Aug. 18, 2003) (no substantive unconscionability where provision limiting punitive damages "provide[d] that punitive damages apply only to the extent allowed by law").

bears the burden of showing that the agreement exists and that its terms bind the other party. See, e.g., Sanford v. Memberworks, Inc., 483 F.3d 956, 962 (9th Cir. 2007). Only when there is no genuine issue of material fact as to whether the parties formed an agreement to arbitrate should the court rule that, as a matter of law, the parties should or should not be compelled to submit their dispute to arbitration. Three Valleys, 925 F.2d at 1141. If doubts as to the formation of an agreement to arbitrate exist, the matter should be resolved through an evidentiary hearing or mini-trial. Sandvik v. Advent Int'l Corp., 220 F.3d 99, 104-07 (3d Cir. 2000); McCarthy, 1994 WL 387852, at *2. When the party opposed to arbitration does so on the ground that no binding agreement to arbitrate exists, the district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise. Concat LP, 350 F. Supp. 2d at 804.

An arbitration agreement "need not expressly provide for arbitration but may instead incorporate by reference another document containing an arbitration clause." Adajar v. RWR Homes, Inc., 160 Cal. App. 4th 563, 569 (4th Dist. 2008). "For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." Id. at 571 (quoting Chan v. Drexel Burnham Lambert, Inc., 178 Cal. App. 3d 632, 641 (2d. Dist. 1986)).

Although both parties' versions of events suffer from

lack of clarity and self-contradiction, what is clear is that there is a dispute as to whether or not Alvarez can be said to have entered into an agreement to arbitrate when he activated his cellular phones. T-Mobile has submitted a Service Agreement signed by Alvarez that incorporates the Terms and Conditions, gives him instructions on how to obtain a copy of the Terms and Conditions, and expressly advises him of the arbitration provision contained in those Terms and Conditions and of the opportunity to opt out of that provision. Alvarez, however, claims that he has never seen this agreement.[3] According to Alvarez, nothing that he saw ever alerted him to the existence of an arbitration agreement or to the incorporation of T-Mobile's Terms and Conditions. There is clearly a dispute as to whether the parties formed an agreement to arbitrate. The declarations of Mr. Smith and Mr. Brown, to which Alvarez objects as improperly submitted with T-Mobile's Reply, further demonstrate the wide gulf between the two parties' accounts.

Pursuant to 9 U.S.C. § 4, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily

---

[3] The court notes T-Mobile's contention that because the Complaint alleges that Alvarez's signature was appended to the Service Agreement and further alleges what the contents of that Service Agreement were, the Complaint suggests that Alvarez did receive a copy of his Service Agreement and Alvarez should be held to have admitted as such. (Reply at 2:4-2:16 (Docket No. 60).) It is possible, however, to read the Complaint in a manner consistent with Alvarez's statements that he did not receive a copy of his service agreement at the time of his purchase and only later obtained a copy of that document, as indeed was represented to be the case by Alvarez's attorney during oral arguments. Given that the court must give the opposing party the benefit of all reasonable inferences, the court will not read the Complaint in the manner urged by T-Mobile.

to the trial thereof." U.S.C. § 4. That same section of the FAA further provides that "[w]here such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue" and that "[i]f no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue." Id.

Since Alvarez did not demand a jury trial on or before the return day for T-Mobile's motion to compel arbitration, he no longer has the right to demand a jury trial on the issue of whether he entered into an agreement to arbitrate with T-Mobile when he activated his phone service. See, e.g., Starr Elec. Co. v. Basic Constr. Co., 586 F. Supp 964 (M.D.N.C. 1982) (holding that plaintiff who failed to request a jury trial on or before the return date of an arbitration petition is not entitled to a jury trial under the FAA); Blatt v. Shearson Lehman/American Express, Inc., No. 84-7715, 1985 WL 2029, at *2 (S.D.N.Y. July 16, 1985) ("Plaintiff has not made a timely demand for jury trial under section 4 of the Act, which required such a demand on or before the return day of defendants' notice of application to compel arbitration, which was May 17, 1985. Accordingly the issue will be resolved by summary trial to the Court . . . ."); Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co., 408 F.2d 606, 609 (2d Cir. 1969) (finding "there was no right to jury trial had these issues existed, since Republic did not make a request for jury trial as required by the statute, 9 U.S.C. § 4, on or before the return day of the notice of application").

This court must therefore hold a non-jury evidentiary hearing on the limited issue of whether T-Mobile and Alvarez formed an agreement to arbitrate. Garbacz v. A.T. Kearny, Inc., No. C 05-05404, 2006 WL 870690, at *2 (N.D. Cal. Apr. 4, 2006) (noting that as neither party requested a jury, "the Court may hold a bench trial or evidentiary hearing to resolve whether an agreement to arbitrate exists").

IT IS THEREFORE ORDERED that an evidentiary hearing shall be held on the sole issue of whether an arbitration agreement existed. The parties shall attend a Status Conference on January 23, 2012, at 2:00 p.m. in Courtroom No. 5. On or before January 17, 2012, the parties shall file a Joint Status Report, containing, inter alia, a suggested date for the hearing; an estimate of the length of the hearing; a list the witnesses each side intends to call, with a summary of such witnesses' testimony; a description of each document or exhibit the parties intend to offer; and a discussion of any legal or evidentiary issues the parties anticipate may arise.

DATED: December 20, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE